[Cite as *State v. Morrison*, 2012-Ohio-2876.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : | Patricia A. Delaney, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011CA00188 |
|  | : |  |
|  | : |  |
| MONTRAVIA MORRISON | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:              Criminal Appeal from Stark County
                                                              Court of Common Pleas Case No.
                                                              2011CR0389

JUDGMENT:                                         Affirmed

DATE OF JUDGMENT ENTRY:             June 25, 2012

APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

JOHN D. FERRERO                               DEREK LOWRY
Prosecuting Attorney                             116 Cleveland Avenue, N.W.
Stark County, Ohio                                800 Courtyard Centre
                                                             Canton, Ohio  44702

BY: RENEE M. WATSON
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio  44702-1413

*Edwards, J.*

{¶1} Defendant-appellant, Montravia Morrison, appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of carrying a concealed weapon. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On April 25, 2011, the Stark County Grand Jury indicted appellant on one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. At his arraignment on May 20, 2011, appellant entered a plea of not guilty to the charge.

{¶3} Subsequently, a jury trial commenced on July 13, 2011. The following testimony was adduced at trial.

{¶4} Canton Police Officer Michael Gary was working the afternoon shift in the patrol division on March 8, 2011. During the evening, he was in uniform in a marked cruiser when he was dispatched to 800 Alan Page Drive in response to a call that several individuals were fighting and at least one had a gun. The given description of the individual with the gun was a black male with dreadlocks who was wearing dark clothing. At the time, it was fairly dark outside.

{¶5} When Officer Gary arrived on the scene, there were lots of people arguing. He testified that there were between seven and nine people and that it was loud. At that point, all of the officers on the scene ordered everyone to get on the ground. Officer Gary testified that he saw appellant standing and that appellant matched the description of the man with the gun. At the time, he did not see a weapon on appellant who was ordered to the ground.

{¶6}   Because there were more individuals on the ground than there were officers present at the scene, the officers decided to handcuff anyone who was on the ground.  Officer Gary testified that no one was frisked or patted down before being ordered to the ground.  According to Officer Gary, both before and after he was handcuffed, appellant was fidgeting around. According to the officer, while appellant was on the ground handcuffed, he was "still fidgeting around, moving around…He's rolling on his side, just fidgeting around, not staying still, not listening to commands." Transcript from July 14, 2011 at 19.

{¶7}   Officer Gary then picked appellant up off the ground so that he could pat appellant down. As he was walking appellant towards a concrete pad, Officer Gary did not notice anything on the ground. The following testimony was adduced when he was asked whether, as he walked appellant through, something caught his attention:

{¶8}   "A. At this point, no.  What caught my attention was once I got him up onto the cement pad I started to do my patdown.  The first thing I do obviously I have them spread their feet apart shoulder width, a little bit more than shoulder width apart.  At that point I start - - due to the fact that he is handcuffed, I start up from his chest area.

{¶9}   "As I start to pat him - - I spread his feet.  As I go to start patting him down, I hear a loud clink.  First thing I do is I look straight down where the noise came from.  At that point I see a black semi-automatic handgun laying on the side of his foot partially out of his pants leg where it hit the ground.  At that point I immediately put my arm around his waist.  I lean him back to get him off balance.  I then reach down.

{¶10}  "At the same time I yell 51 which lets my officers know that I found a gun.  I reach down.  I grab the handgun. I reach back, I pass the handgun off to Officer

Sedares who was standing right next to me at that point.  I pass the gun to him.  He takes the gun, he clears the gun.  At that point I lean him forward.  I continue my patdown. Through my patdown I find several rounds of I believe .22 long rifle ammunition in his left jacket pocket." Transcript from July 14, 2011 at 22-23.

{¶11} According to the officer, the handgun, which was a .380 Hi-Point semiautomatic handgun, was loaded with eight rounds and he believed that one of the rounds was in the chamber ready to fire.

{¶12} Officer Gary testified that, part of the gun was covered by appellant's pants leg.  The ammunition found in appellant's pocket could not be fired from the .380 hand gun.  Officer Gary testified that the gun was sent to the lab for an operability test and that the gun was found to be an operable firearm. The parties late stipulated that the gun was operable.

{¶13} On cross-examination, Officer Gary testified that at least one other individual on the scene matched the description of the person with the gun. He further testified that while it was dark outside, it was not completely dark because of lighting from nearby buildings. On redirect, he testified that it was light enough for him to see appellant and the immediate environment and that, as he walked appellant the three or four steps to the concrete patio, nothing was on the ground that caught his attention.

{¶14} Officer Larry Legg of the Canton Police Department testified that he was in uniform on the scene on the date in question. He testified that he handcuffed appellant because appellant did not comply with the police order to get on the ground. Appellant, according to the officer, refused to do so.  Officer Legg testified that appellant was very

fidgety while on the ground and would not lay still. On cross-examination, he testified that he did not know if there were multiple people at the scene with dreadlocks.

{¶15} At trial, Officer Kevin Sedares of the Canton Police Department testified that he responded to the dispatch and that he observed a man with dreadlocks at the scene. He testified that appellant initially refused to get on the ground and that appellant "kept rolling over trying to reach under him…" Transcript from July 14, 2011, at 75. According to Officer Sedares, no one was patted down before being ordered to the ground. Officer Sedares further testified that while Officer Gary was patting down appellant, he heard a clunk and Officer Gary "yelled 51 which is our code for gun." Transcript from July 14, 2011, at 77. On cross-examination, he testified that appellant was the only one with dreadlocks and that he did not see the gun fall out of appellant's pants leg, although he heard it fall.

{¶16} After appellee rested, the defense called a number of witnesses. Solana Johnson testified that she had a good aerial view of the scene from her balcony and could see what was happening. According to her, the officers patted down the individuals while they were on the ground. She further testified that there was a second man on the scene with dreadlocks. Kolitta Eskew testified that she was visiting her mother, Solana Johnson, and was ordered to the ground by the police. She testified that a couple of people on the scene had dreadlocks and that she was searched while on the ground. Eskew testified that she was searched a total of three times. Kirby Johnson testified that appellant was his sister's boyfriend. He testified that he was ordered to the ground by the police, handcuffed and then patted down a total of three times. According to Johnson, he was patted down as soon as he laid on the ground. Johnson testified

that the gun was found in the grass and that it was too dark to see anything on the ground without a flashlight. On cross-examination, Johnson testified that he did not see Officer Gary find the gun, but heard the officer screaming.

{¶17} Nanette Bell testified that she was outside on the date in question and that she observed the officers search appellant three times. According to Bell, the officers found the gun on the third search. Christopher Johnson, who is appellant's girlfriend's cousin, testified that he was ordered to the ground by the police and was searched a total of three times. He admitted that he did not actually see the police search appellant and find a gun. The final witness to testify was Stacey Johnson, appellant's girlfriend. She testified that appellant and everyone else on the ground was searched a total of three times and that there were two other people with dreadlocks that night. She testified that she did not see the police find a gun on appellant and that the officers found the gun in the grass.

{¶18} At the conclusion of the evidence and the end of deliberations, the jury, on July 15, 2011, found appellant guilty of the charge of carrying a concealed weapon. Pursuant to Judgment Entry filed on August 26, 2011, appellant was placed on community control for a period of two years.

{¶19} Appellant now raises the following assignment of error on appeal:

{¶20} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶21} Appellant, in his sole assignment of error, argues that his conviction for carrying a concealed weapon was against the manifest weight and sufficiency of the evidence. We disagree.

{¶22} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶23} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶24} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something

that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶25}** Appellant was convicted of carrying a concealed weapon in violation of R.C. 2923.12(A)(2). Such section states as follows: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following…(2) A handgun other than a dangerous ordnance…"

**{¶26}** Appellant, in support of his argument, notes that while Officer Gary testified that appellant was the only person fidgeting while on ground, Kolitta Eskew testified that the officer yelled at her to lie still while on the ground. Appellant further notes that the concrete pad was not searched prior to appellant's pat-down, that there was testimony that it was dark in the area at the time, and that it was too dark to see anything on the ground without a flashlight, and that there was testimony from defense witnesses that the gun was found in the grass. Appellant also argues that while the officers testified that no one was searched prior to being handcuffed, defense witnesses testified that the people placed on the ground were searched a total of three times and that the gun was found during the third search. Appellant also emphasizes that there was testimony that there were other individuals on the scene with dreadlocks wearing dark clothing.

**{¶27}** However, based on the testimony of Officers Gary and Sedares, we find that there was sufficient evidence that appellant knowingly carried or had concealed on his person or concealed ready at hand a handgun other than a dangerous ordnance. Furthermore, while there were conflicting accounts as to the events of March 8, 2011, we note that the jury, as trier of fact, was in the best position to assess credibility.

Clearly, the jury found the state's witnesses more credible than appellant's. In short, we cannot find that the jury lost its way in convicting appellant of carrying a concealed weapon.

{¶28} Appellant's sole assignment of error is, therefore, overruled.

{¶29} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Edwards, J.

Delaney, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0319

[Cite as *State v. Morrison*, 2012-Ohio-2876.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
                Plaintiff-Appellee     :
                                       :
                                       :
-vs-                                   :       JUDGMENT ENTRY
                                       :
MONTRAVIA MORRISON                     :
                                       :
                Defendant-Appellant    :       CASE NO. 2011CA00188


    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.


                                       _____

                                       _____

                                       _____

                                                       JUDGES